No. 21,493.

THE ACME IRON COMPANY, *Appellant*, v. THE HENNEBERRY COMPANY, *Appellee*.

SYLLABUS BY THE COURT.

1. SALE — *Privilege of Testing Machine — Right to Rescind Forfeited.* Where machinery was purchased upon a written contract providing for a sixty days' trial test, and providing that if the machinery was satisfactory the purchaser would honor a sight draft for the price in sixty days from the installation of the machinery, and providing that if the machinery was not satisfactory the purchaser would notify the seller in writing so that the latter might have an opportunity to make it satisfactory, and where no intimation of dissatisfaction was given within the sixty days, the obligation to pay became absolute, and an extension of time for trial test could only be effected by a further agreement between the parties upon a valid consideration.

2. SAME. A request for further time to make a trial test of the machinery, written after the period for trial test had expired, cannot be construed as a notice of dissatisfaction.

3. SAME — *Judgment for Plaintiff Directed.* The controlling facts examined, and held to require that judgment for plaintiff be ordered.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed November 9, 1918. Reversed.

*E. E. Martin*, of Kansas City, *W. L. Cunningham*, of Arkansas City, and *C. W. Roberts*, of Winfield, for the appellant.

*Albert Faulconer*, and *C. Ward Wright*, both of Arkansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for the purchase price of two automatic boiler cleaners which the plaintiff had sold to the defendant subject to a trial test of sixty days. The written contract and terms of sale provided—

"The Acme Iron Company has hereby sold and agrees to ship to Henneberry & Co., of Arkansas City, Kansas, No. 2 No. 10 Automatic Steam Boiler Cleaner on a trial test of 60 days. The Acme Iron Company agreeing to ship and attach, or have same attached as promptly as possible to said purchasers boilers, and if satisfactory at the expiration of sixty days said purchaser agrees to pay said Acme Iron Company the sum of $320.00 and to honor and pay demand or sight draft for same 60 days from date of attachment. If not satisfactory the said purchaser shall notify said Acme Iron Company, in writing, and if same cannot be made satisfactory, shall deliver said cleaner and each and every part of same, properly crated or packed for shipment, to the freight depot and notify The Acme Iron Company, that same is subject to its order, otherwise this agreement shall become payable in accordance with its terms."

On September 28, 1914, the defendant wrote to the plaintiff as follows:

"This is to advise you that Mr. Newcomb has completed the installation of two of the Acme 2 of the Acme Automatic Steam Boiler Cleaners, size Nos. 10s on our plant to-day, on a 60 day trial test, and all piping and fittings are apparently connected in a satisfactory manner."

One of the defenses pleaded was that on November 28, 1914, the defendant notified the plaintiff by letter that the boiler cleaners were not satisfactory. The letter reads:

"The Acme Iron Co.,
"356 LaFayette Avenue,
"Kansas City, Kans.

"Referring to your letter of the 27th, Mr. Henneberry instructed me before he went east, to request an extension of time on the equipment put on our boilers by your company.

"He told me to ask for another sixty days on account of certain conditions in the boiler room which did not enable us to get proper tests on the first sixty days."

On the preceding day, November 27, the plaintiff had addressed a letter to the defendant reminding the latter that payment was due that day (it was not due until next day, the 28th), and asking defendant to remit payment. This letter added—

Iron Co. v. Henneberry Co.

"Our Mr. Newcomb will probably be in Arkansas City about the 28 and should you see him and prefer to hand him a check to cover the amount, it will be satisfactory with us and he will receipt for same."

About November 29, Newcomb called on defendant and presented plaintiff's bill (which was after the sixty days' trial period had expired), and defendant's secretary and treasurer told him—

"A. I told him that if we did n't get an extension of time to test them further the cleaners were condemned.

"Q. What did he say then? A. He stayed around there a while then went to the boiler room but he did n't come back to see me any more."

Later, further correspondence passed between the parties showing the divergence of their views touching the defendant's liability, its claim of right to further time to test the cleaners and its determination to renounce and repudiate the contract unless further time was given, and the plaintiff's insistence upon the literal terms of the original contract with offers of additional time for payment. But the issue between the parties properly turned on the main facts above quoted.

Defendant prevailed below, and plaintiff appeals, the gist of the errors assigned being a complaint as to the net result.

It will be observed that the contract provided, subject to qualifications therein incorporated, that the period for the trial test was sixty days, and the contract also provided that the defendant would honor a draft for the purchase price "60 days from date of attachment." Since the attachment of the cleaners was completed on September 28, the plaintiff was entitled to draw a sight draft on defendant on November 28; in other words, payment was due on the latter date. Analyzing the qualifications of the contract, such payment was to be made in sixty days if the cleaners were satisfactory. If they were not satisfactory, defendant was to notify plaintiff in writing; and, by implication, plaintiff was to have an opportunity to make them satisfactory. Within what time should written notice of dissatisfaction be given? Certainly before the time when defendant's sixty days' obligation would become absolute. This is the fair interpretation of the contract. It will not do to say that the notice of dissatisfaction was not due until sixty days plus a reasonable time thereafter. Unless the plaintiff had written notice of dissatisfaction before the time when it was

entitled to draw its sight draft, the qualifications in the terms of the contract should go out of the case, and the defendant's obligation would become absolute.

But observe the written notice of dissatisfaction upon which defendant relies. It was a request for further time because of "conditions in the boiler room." This letter gives no intimation of dissatisfaction with the cleaners furnished by plaintiff. Moreover, the obligation to pay was absolute when that letter was written, for the time of the trial test had then expired.

An attempt was made in the trial court to show that Mr. Newcomb, the plaintiff's special agent authorized to receive payment for the cleaners, had granted an oral extension of time to test the machinery. The evidence to support that contention, in substance, is quoted above. Even if Newcomb had been authorized to make such extension (and evidence of that authority was wanting), the evidence quoted does not warrant the interpretation of a grant of extended time. Furthermore, the course followed by defendant after the visit of Newcomb was inconsistent with the terms of any extension agreement, for, had such agreement been made, the defendant would have continued to be bound to notify the plaintiff of defect or dissatisfaction in the cleaners and to give plaintiff a fair opportunity to remedy any defects. Instead of this, however, after an argumentative correspondence with plaintiff, defendant summarily removed first one of the cleaners and then the other. If it could be said that there was an agreement for an extension of time to test the cleaners, and if the questions be waived as to who made such agreement and upon what consideration it was made, yet even that suppositive agreement was breached by the defendant by its failure to give written notice and failure to give plaintiff an opportunity to remedy defects and make the machinery satisfactory. Viewed from any aspect of this case, no sufficient defense to plaintiff's cause of action was established; the defendant is irrevocably bound by its contract, and as all the material and controlling facts are established, the judgment must be reversed and judgment for plaintiff directed.

It is so ordered.